IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VERTIS LANIER and DOROTHY LANIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 04-0367-P-L |
| | ) | |
| MCKIBBON BROS., INC., d/b/a RESIDENCE INN, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER ON DEFENDANT'S SUPPLEMENTAL MOTION FOR
SUMMARY JUDGMENT

On January 24, 2005, in this slip-and-fall tort action brought pursuant to 28 U.S.C. § 1332, this

court granted defendant's Motion For Summary Judgment as to plaintiffs' claims one and two regarding

safety measures, and denied defendant's Motion as to plaintiffs' claims one and two regarding an alleged

"greasy substance" on the surface of the bathtub (doc.37).  Judgment pursuant to Rule 54(b) of the

Federal Rules of Civil Procedure was entered the same day (doc.38).

On January 26, defendant filed a Supplemental Motion For Summary Judgment (doc.39), it is the

Supplemental Motion For Summary Judgment which is currently before this court.  Plaintiffs filed a

Memorandum in Opposition with Exhibits in Response (doc.51).  After careful review of all relevant

matter, this court finds that defendant's Supplemental Motion For Summary Judgment is GRANTED.

A.  Procedural History

The procedural history from the outset of this action, on May 7, 2004, through December 14,

2004, is set out in this court's Order On defendant's Motion For Summary Judgment issued on January

24, 2005 (doc.37, p.1-4).  This court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332 (doc.37, p.2).

On January 26, 2005, defendant filed the subject Supplemental Motion For Summary Judgment (doc.39).  Discovery proceeded.

On March 14, 2005, the parties filed their Preliminary Joint Pretrial Statement (doc.55).  On March 21, 2005, the parties appeared before this court for a pretrial conference (doc.57).  At the conference, the parties reported that mediation had been unsuccessful in bringing resolution to the action.  Even so, the parties reported that they continue to negotiate in an effort to reach a possible settlement.  This court, then, continued the pretrial conference and afforded the parties additional time within which to schedule and participate in further mediation.  Id.  On March 23, 2005, defendant noticed the court that further mediation was scheduled for April 26, 2005 (doc.58).

This court discovered that the April 26, 2005 mediation did not end in settlement.  The Pretrial Conference has been rescheduled to be conducted on June 21, 2005 (docs.62-63).

Two of plaintiff's claims, asserted in their Amended Complaint,[1] survived defendant's initial Motion For Summary Judgment: 1) Negligent failure of defendant to allow "a greasy substance to be left in the [bath]tub... the tub where [plaintiff] VERTIS LANIER slipped had a smooth bottom...[,] the smooth bottom tub cannot offer the same non-slip performance of textured tubs...[, and] the tub was not properly maintained due to the greasy substance..."; and 2) plaintiff Dorothy Lanier claims loss of consortium.  Plaintiffs seek damages, interest, and costs (doc.20).

Defendant's Supplemental Motion For Summary Judgment challenges these claims (doc.39).  As noted plaintiffs filed a Memorandum in Opposition with Exhibits in Response (doc.51).

<u>B.  Findings of Fact</u>

This court's findings of fact are set out in this court's Order On Defendant's Motion For

---

[1]  Plaintiffs filed their Amended Complaint on November 16, 2005 (doc.20).

Summary Judgment (doc.37, p.4-5).[2]  To these, the court adds the parties' hotly disputed facts regarding the existence of an alleged greasy substance on the bathtub surface in room 307 at the Residence Inn.

Plaintiff Vertis Lanier testified that, on May 11, 2002, at approximately 10:00 a.m., he

... went in to take a shower ... I stepped over the tub to take a shower and reached and... turned the water on.  Meantime I flipped out just like something -- just like I had stepped in some grease or what it was.  I don't know what it was.

And then as the water started, I fell out - - I fell out of the bathtub.  My feet stayed over...

* * *

... I went in that tub to take a bath, and I can't really say this, but when my foot - - when I got in that tub, it was just like I was stepping on ice.  And it had to be something that made me slip like that.  I mean I'm not reckless when I'm taking a bath.

* * *

I don't know what caused it.  I'd be lying if I said I did.  I know it wasn't me...

* * *

... the minute I stood up like this is when my feet kicked out from under me...  If I know what caused it, I could have dodged it,...

* * *

Q.      So are you saying there was a foreign substance?

A.      I don't know what it was...

Q.      So are you alleging that there was something on the floor of the tub that you actually slipped on, or you just slipped?

A.      I don't know.  I slipped...

Q.      And before getting into the tub..., did you look around?  Did you inspect it or anything like that?

---

[2]  As noted herein, since this court issued the Order on Defendant's Motion For Summary Judgment (doc.37), the parties filed their Joint Preliminary Pretrial Statement, including therein their "Admitted Facts" (doc.55, p.6).  The only uncontested facts presented by the parties are the parties' addresses.  Id.

A.      No, I don't do that, no.

* * *

Q.      Is it your position that the bathroom was not well designed or not well equipped?

A.      ... I don't know, but I know they don't want people falling out of the bathtub like this, and I know I didn't do anything to cause me to fall.  So something was wrong.  I don't know if something was left in the tub, some kind of solution was left in the tub.

Anything could have happened.  I know I didn't put it there, and I know that the motel didn't know it was there or they would have taken it out,...  But I know I fell through no fault of my own,...

* * *

Q.      ... you said there was some type of grease in the bottom of the tub; is that - -

A.      I didn't know - - let me say it felt, the way I slipped, it had to be something in that tub.  I couldn't say I saw it because you couldn't see too well in the bathroom.  But I can't swear there was grease in there, but my foot - - my feet slipped from under me.

(doc.39, Ex.11-Deposition of Vertis Lanier, dated November 5, 2004, p.1, 42-44, 47, 49, 78-79, 84).

Plaintiff Dorothy Lanier testified that the substance was "greasy." (doc.39, Exhibit 2, Deposition of Dorothy Lanier, dated November 5, 2004, p.48-49).  It was "all other the bottom of the tub, and could not be seen with the naked eye."  Id.  Plaintiff Dorothy Lanier further testified that after her husband's fall: "[She and her daughter] just went over the whole - - the bottom of the tub and it all was slick like that."  Id., p.50.  When asked if she had taken "some kind of samples of - - [the greasy substance]," Dorothy Lanier testified: "No, we didn't take any samples. ... [W]e just checked the tub, and you could just feel it.  It was enough there.  I don't know what kind of substance it was,... , but it was greasy.  I don't know what it was."  Id., p.29-30.

Plaintiff Dorothy Lanier testified that she did not report the presence of the greasy substance to defendant.  Id., p.37-38.

4

Q.      ... You are saying that you never voiced this to the Residence Inn until now?

A.      No, because they never contacted us.  She was - - they was supposed to contact us on that next day.  Nobody never did.  They was going to bring up a written statement.  Nobody never did.  We never heard a word from them.

Q.      So when you checked out of the hotel - -

A.      I never said anything.  Paid my bill and left.

Id.

When asked if plaintiffs had any communication with defendant regarding the greasy substance,

plaintiff Dorothy Lanier testified:

I did not.

Q.      So you never told them that you found this substance?

...

Q.      My question is: You never told an employee - -

A.      No.

Id., at 37.

Barbara Robinson, Assistant Manager of the Residence Inn testified:

... I have worked for this Residence Inn for eight (8) years, and I have held the position of Assistant Manager for three (3) years.

Before May 11, 2002, and during my eight (8) year employment with Residence Inn, there had been no reported bathtub slip-and-falls by patrons in room 307.  Before May 11, 2002, there had been no reported complaints about a foreign or greasy substance in the bathtub in room 307.

In eight (8) years of working with this Residence Inn, there has been one (1) other incident of a patron slipping and falling in a bathtub, which resulted in a lawsuit being filed in April of 2001.  This incident did not occur in room 307, and it did not involve allegations of a foreign or greasy substance present in the subject bathtub.

[Plaintiffs] never reported the presence of a foreign or greasy substance in the bathtub in room 307 following the alleged slip-and-fall of Mr. Lanier...

5

(doc.29, Ex.3-Affidavit of Barbara Robinson, dated January 25, 2005, ¶2-5).

Amie Flowers, General Manager at the Residence Inn, testified that she has held that position for the past four (4) years (doc.39, Ex.4-Deposition of Amie Flowers, dated January 14, 2005, p.5). Ms. Flowers testified that she is unaware of any "industry standard on the proper maintenance in cleaning... bathrooms." Id., p.38. She further testified about the cleaning schedule of plaintiffs' room.

> They checked in on the 9th and so it was cleaned the day of the 9th. And then the guests' requested, the Laniers, on the 10th not to have any service. And on the 11th they requested no service, just towels.
>
> So. The day prior to the incident they did not have any service.

Q.    Do you know if they had any service the day of the incident?

A.    The day of the incident they requested no service and they just wanted towels.

Id., p.42-43, see also plaintiffs' Ex.C-Housekeeper Worksheets for May 8-11, 2002.

Plaintiff Dorothy Lanier testified that "at no time did she or her husband request [defendant] not to perform housekeeping services to their room... They properly paid [defendant] and [they] were invitees and that [defendant] was to clean the room" (doc.51, Ex.1-Affidavit of plaintiff Dorothy Lanier, dated February 24, 2005).

The Housekeeper Worksheets for room 307 (Id., Ex.C, referring to p.42), reflect that on May 8, 2002, it was "VD," vacant and dirty and in the evening it was "VC," vacant and clean. Id. On May 9, 2002, the room was vacant and dirty, and in the evening it was vacant and clean, given "suite care." Id. On May 10, 2002, the room status was "N/S," no service. Id. On May 11, 2002, the room status was no service, "just towels." Id. Plaintiffs checked out on May 12, 2002 (doc.16, Ex.12).

Plaintiff Dorothy Lanier testified that the "foreign substance had to have been in the bathtub for at least two (2) days, since they did not use the bathtub until the second day of the[ir] stay... the first day they only checked in and actually stayed with their daughter and son-in-law and not at the hotel..."

(doc.51, Ex.1; <u>see also</u> doc.23, Ex.D-Dorothy Lanier Depo., p.34).

General Manager Flowers testified as to the procedure for cleaning the [defendant's] guest

bathrooms:

> [N]ormally they go in and remove any dirty towels that would be in there.  Then they
> spray a [dark] pink cleaner, which is the Echo Lab product, it's an Oasis product,...  Echo
> Lab is the company and it's an Oasis, O-A-S-I-S, product [Oasis 299].  And you spray it
> onto the tub, the tub wall, and you let it sit for a few minutes, and then you wipe that off.
> And on the bathrooms, a yellow Oasis product from Echo Lab [Oasis 133] that they use
> on the floor.  So, they clean it, essentially rinse anything that needed to be rinsed out of
> the tub; dry it, and which keeps down mildew.  And then they would clean the bathroom
> floor with the yellow product.  And then they walk away after cleaning the toilet...  Its an
> approved vendor through Marriott and it's used in every brand of hotel that I have ever
> been affiliated with...

(doc.51, Ex.5-Flowers Depo., p.22-24).

Plaintiffs' daughter Patricia Lewis examined the tub in room 307, with her mother after her

father's fall, and took pictures of the tub (doc.51, Ex.3-Deposition of Patricia Lewis, dated January 14,

2005, p.23).  Mrs. Lewis testified that it looked like there was "a greasy substance in the tub..."  <u>Id</u>.

As previously noted, pursuant to the Rule 16(b) Scheduling Order, plaintiffs were to name their

experts on or before September 7, 2004, and to file their expert disclosures on or before December 15,

2004.  (doc.6, item 4; doc.16, Ex.4, item 4).  Plaintiffs have identified no expert other than medical

personnel, Dr. Robert Smith and Ms. Carla McKenzie of Central Mississippi Medical Services, of

Jackson, Mississippi (doc.16, Ex.5).

<u>C.  Standard</u>

The standard under which this court considers defendant's Supplemental Motion For Summary

Judgment is fully set out in this court's Order On Defendant's Motion for Summary Judgment (doc.37,

p.6).

<u>D.  Discussion</u>

Alabama substantive law applies (docs.14, 22).  <u>Erie R.R. Co. v. Thompkins</u>, 304 U.S. 64, 78

(1938) ((doc.37, p.6).

1.  Plaintiffs' Negligence Claim.

 Plaintiffs allege that defendant was negligent in allowing "a greasy substance to be left in the [bath]tub... the tub where VERTIS LANIER slipped had a smooth bottom...[,] the smooth bottom tub cannot offer the same non-slip performance of textured tubs...[, and] the tub was not properly maintained due to the greasy substance..." (doc.20).  Plaintiffs claim (1) negligence on the part of defendant; and 2) plaintiff Dorothy Lanier claims loss of consortium.  Id.

 Defendant contends that it did not have actual or constructive knowledge of a greasy substance in the bath tub (doc.39, p.4).  Defendant argues that plaintiff Vertis Lanier has no idea what caused his alleged slip-and-fall in the bathtub (doc.39, attached Memorandum, p.1, referring to his Deposition testimony).  Defendant further argues that the "something" that plaintiff Vertis Lanier claims caused his fall, an alleged greasy substance, is of an unknown nature and origin.  Defendant points this court to case law *in re* foreign substance slip-and-fall in a retail setting, Ex parte Wal-Mart Stores, Inc., 806 So.2d 1247 (Ala. 2001); Hose v. Winn Dixie Montgomery, Inc., 658 So.2d 403 (Ala. 1995); East v. Wal-Mart Stores, 577 So.2d 459, 460-61 (Ala. 1991); and Vargo v. Warehouse Groceries Management, Inc., 529 So.2d 986 (Ala. 1988), insofar as Alabama jurisprudence is silent on point, i.e., a foreign substance slip-and-fall in a bathtub.

 Plaintiffs argue that defendant did have actual or constructive notice of the alleged substance because the bathtub had been cleaned before the Laniers' arrival.  Plaintiffs direct the court to two Alabama cases: Dye-Washburn Hotel, Co. v. Aldridge, 93 So. 512 (Ala. 1922), and Carter v. Innis Free Hotel, Inc., 661 So.2d 1174 (Ala. 1995), as well as Lincoln Operating Co. v. Gillis, 114 N.E.2d 873 (Ind.

1953).  This court finds that <u>Aldridge</u> and <u>Carter</u> are factually distinguishable from the facts *sub judice*,[3]

and <u>Gillis</u>, is neither controlling, nor persuasive authority.

     In a foreign substance slip-and-fall case, "[a]ctual or constructive notice of the presence of the

offending substance must be proven before the [defendant] can be held responsible for the injury."

<u>Vargo</u>, 529 So.2d at 986.  In <u>Vargo</u>, the plaintiff slipped and fell in water that had collected on the floor in

front of an ice machine in the store.  The trial court granted summary judgment for the defendant, and the

Supreme Court affirmed.  The Court emphasized that there was no evidence that the defendant knew the

water was on the floor or that it had been there such a length of time as to impute constructive notice.

<u>Vargo</u>, 529 So.2d at 987.  The Court noted that the plaintiff and her witness testified by deposition that

they had no idea how long the water had been there, "except as to say that 'it looked like it had been

there for a while.'"  The Court concluded that, based on the evidence, "any inference that [the defendant]

was negligent would be the result of mere speculation."  <u>Id</u>.

     In the summary judgment context, a plaintiff must prove (1) that the substance slipped upon had

been on the floor a sufficient length of time to impute constructive notice to [the defendant]; or (2) that

[the defendant] had actual notice that the substance was on the floor; or (3) that [the defendant] was

delinquent in not discovering and removing the substance."  <u>East</u>, 577 So.2d at 461.  In <u>East</u>, the plaintiff

slipped and fell in a foreign substance which appeared to be either liquid soap or lotion.  <u>Id</u>., at 460.  The

plaintiff testified that the substance was in one puddle and was white in color.  She also testified that there

---

[3] In <u>Aldridge</u>, the plaintiff, a hotel guest, was injured by falling glass when a window screen two floors above the mezzanine where she was sitting, was knocked out of a window and fell through a glass skylight.  93 So. at 514.  The jury found for plaintiff.  On appeal the Supreme Court of Alabama affirmed the trial court's denial of the defendant's motion for a new trial.  <u>Id</u> ., at 516.  The Court also affirmed the trial court's rulings on a number of jury charges.  <u>Id</u>.

     In <u>Carter</u>, the plaintiffs complaint included claims of invasion of privacy, breach of contract, negligence, outrage, and fraud arising out of a "peeping tom" incident.  The alleged peeping was orchestrated through the mirrors in adjoining rooms.  661 So.2d 1177-78.  The trial court entered summary judgment for the defendant.  <u>Id</u>., at 1176.  The Supreme Court of Alabama, in relevant part, reversed summary judgment as to plaintiffs' claim of negligence.  <u>Id</u>., at 1179-80.

were no "skid marks" in the substance, and it appeared that no one else had stepped in the substance. The plaintiff did not know how long the substance had been on the floor before her fall.  Further, she did not believe that Wal-Mart had any notice of the substance on the floor until the accident was reported. The Alabama Supreme Court affirmed summary judgment entered by the trial court in favor of the defendant because the plaintiff failed to offer evidence that defendant had actual or constructive notice of the substance or that it was derelict in failing to discover and remove the substance.  Id.

Applying the analysis to the case _sub judice_, plaintiffs must prove (1) that the alleged foreign "greasy substance" slipped upon had been on the tub surface a sufficient length of time to impute constructive notice to defendant; or (2) that defendant had actual notice that the alleged "greasy substance" was on the tub surface; or (3) that defendant was delinquent in not discovering and removing the alleged "greasy substance."  See East, 577 So.2d at 461.  "Mere conclusory allegations or speculation that a fact exists will not defeat a properly supported motion for summary judgment.  'Bare argument or conjecture will not satisfy [plaintiffs'] burden to offer facts to defeat the motion.'"  Ex parte Wal-Mart Stores, Inc., 806 So.2d at 1251; Hose, 658 So.2d 405.

In Ex parte Wal-Mart Stores, Inc., 806 So.2d 1247 (Ala. 2001), the plaintiff slipped and fell in shampoo.  Id., at 1249.  In support of her claim that Wal-Mart had constructive notice of the shampoo spill, the plaintiff testified that, among other things, the shampoo was "sticky and... half dry," as if "it had been down there for some time," and it was "clear on the floor."  Id., at 1250.  The Court noted that this testimony was "functionally indistinguishable" from the evidence presented in Vargo, and Hose, and held that the plaintiff did not present satisfactory evidence that the shampoo had been on the floor of the store a sufficient length of time to impute constructive notice to Wal-Mart.  Id., at 1252-53.

In Hose, the Alabama Supreme Court affirmed a summary judgment in favor of the defendant in a slip and fall case.  The plaintiff slipped and fell in what she described as a "murky liquid substance."

10

The plaintiff testified that she did not know how the liquid got on the floor or how long it had been there, but "[y]ou could tell people had been walking in it."  658 So.2d at 405.  The Court stressed that the plaintiff could not "explain what the substance was or what about it indicated that people had been walking in it."  Thus, the plaintiff failed to present sufficient evidence that the defendant knew, or should have known, before the accident, of the liquid on the floor.  Id.

Herein, plaintiffs failed to present any expert evidence that the cleaner used in the bath tub or on the floor was greasy or could have caused the tub surface to be slippery if it had not been used properly. Viewing the facts in the light most favorable to plaintiffs, this court finds that defendant has made a proper showing that it had no notice, actual or constructive, of any foreign, unidentified, "greasy substance" on the tub surface in room 307.  The evidence presented reflects that defendant used a known cleaner in the industry, Oasis 299, to clean the bathtub.  Room 307 was cleaned prior to plaintiffs' occupancy on May 9, 2002.  Room 307 was not cleaned again while plaintiffs occupied it.

In response, plaintiffs have failed to establish (1) that the alleged foreign and unidentified  "greasy substance" slipped upon had been on the tub surface a sufficient length of time to impute constructive notice to defendant.  Plaintiffs have failed to identify the alleged substance.  They merely infer that the alleged unidentified "greasy substance" is the Oasis cleaner.  Plaintiffs' took no samples and have failed to name any particular expert witness to identify the alleged substance.  There is no proof that the substance plaintiffs allege was on the surface of the tub was, in fact, the Oasis cleaner.  Further, plaintiff Vertis Lanier testified that he did not know what the alleged substance was and stated that he could not swear there was grease in the tub.

Regarding the length of time that the alleged substance was present, it is conjecture, at best, that it had been on the tub surface for the period of time that the bathroom was not in use by plaintiffs, the period of time they stayed with their daughter.  Plaintiffs have come forward with no proof (2) that

defendant had actual notice that the alleged "greasy substance" was on the tub surface.  Plaintiffs only

speculate that defendant somehow had actual notice of the "greasy substance" insofar as the

housekeeping maid would have used put it on the tub surface, if in fact it was the Oasis cleaner.  Further,

plaintiff Vertis Lanier testified: "I know that the motel didn't know it was there." (doc.39, Ex.11, p.78-79).

Finally, plaintiffs have failed to establish (3) that defendant was delinquent in not discovering and

removing the alleged "greasy substance."  Plaintiffs never complained to defendant of the alleged "greasy

substance."  Even after Mr. Lanier's fall, they did not express concern for the alleged substance on the

tub surface, they paid their bill and left, and before May 11, 2002, there had been no reported complaints

by other guests about a foreign or greasy substance in the tub of room 307.   See East, 577 So.2d at 461.

This court notes that plaintiffs attempt to raise a factual dispute to defeat summary judgment with

plaintiff Dorothy Laniers' latest Affidavit, dated February 24, 2005 (doc.51, Ex.1).  Amie Flowers

testified that on May 11, 2002, the day of Mr. Lanier's fall, the Laniers requested no service, just towels

(doc.39, Ex.4-Flowers Depo., p.42-43).  Dorothy Lanier counters that "at no time did she or her husband

request [defendant] not to perform housekeeping services to their room..." (doc.51, Ex.1).

This court finds that the dispute does not alter the fact that plaintiffs have failed to establish actual

notice on the part of defendant of the alleged "greasy substance" or foreign substance upon which Mr.

Lanier allegedly slipped.  In fact, plaintiffs' testimony was that they did not give any notice.  There-fore,

defendant's Supplemental Motion For Summary Judgment as to plaintiffs' claim of negligence is granted.

2.  Plaintiff Dorothy Lanier's Loss of Consortium Claim.

Under Alabama law, a loss of consortium claim is derivative of the claims of an injured spouse.

See Ex parte N.P., 676 So.2d 928, 930-31 (Ala. 1996).  Insofar as defendant's Supplemental Motion For

Summary Judgment is granted as to plaintiffs' negligence claim, Mrs. Lanier's derivative loss of

consortium claim fails as a matter of law.

E.  Conclusion

Accordingly, it is ORDERED that defendant's Supplemental Motion For Summary Judgment (docs.39), be and is hereby GRANTED.

It is further ORDERED that, insofar as there are no claims remaining, this action be and is hereby DISMISSED with prejudice.  The Pretrial Conference scheduled to be conducted on June 21, 2005, is hereby CANCELED.

DONE this 31ˢᵗ day of May, 2005.


  S/Virgil Pittman_____
SENIOR UNITED STATES DISTRICT JUDGE